## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**REGINALD A. PONDS ET AL.**                                  **CIVIL ACTION**

**VERSUS**                                                           **No. 16-1935**

**FORCE CORPORATION**                                        **SECTION I**

## ORDER AND REASONS

Before the Court is the defendant Force Corporation's motion[1] in limine to limit the testimony of plaintiffs' proposed expert, Alan J. Blackwell ("Blackwell"). Force Corporation does not challenge Blackwell's qualifications "in the classic sense that would require the Court to distinguish between speculative or unreliable scientific methodology and legitimate expertise." [2] *See Nagle v. Sheriff Marlin Gusman*, No. CV 12-1910, 2016 WL 541436, at *4 (E.D. La. Feb. 11, 2016) (Vance, J.). Instead, Force Corporation argues that some of Blackwell's opinions are inadmissible either because they are legal conclusions or because they are subjects on which no expert testimony is necessary or allowable. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Reginald Ponds ("Ponds") was employed by SGS Petroleum Service Corp. as a switchman operator and assigned to the Occidental Chemical Plant in Hahnville, Louisiana. On August 23, 2015, Ponds was performing switching

---

[1] R. Doc. No. 21.
[2] *See* R. Doc. No. 21-1, at 3.

operations on Track 18 of the Occidental Chemical Plant. Ponds alleges that as he was riding on a railroad tank car, an unexpected lateral shift caused him to lose his grip, fall from the rail car, and sustain injuries. Ponds and his wife, Maryl Wright, then filed this lawsuit against Force Corporation, the contractor hired by Occidental Chemical Corporation to perform track inspection and maintenance at the chemical plant. The plaintiffs allege that substandard track conditions caused Ponds's fall.

Blackwell was retained by the plaintiffs as a railway consultant/expert witness. In his expert report, Blackwell opines, inter alia, that Force Corporation failed to exercise reasonable care in carrying out its duties to perform track maintenance and repairs and thereby failed to provide Ponds with a reasonably safe workplace.[3] In addition, Blackwell states that "Force Corporation failed to comply with the standards of care that are the custom and practice of the industry, which include: Union Pacific Engineering Track Maintenance Field Manual Section 3.1.8; Code of Federal Regulations Part 213 Track Safety Standards 213.5(a), 213.9(b) and 213.109(b); AREMA Practical Guide to Railway Engineering Recommended Practices; [and] Railway Education Bureau, Basic Principles of Track Maintenance."[4]

---

[3] See R. Doc. No. 21-3, at 12 ("Based on my specialized knowledge and experience, and the materials and information reviewed thus far, it is my opinion Force Corporation failed to exercise reasonable care in carrying out its duties to perform track maintenance and repairs of Track 18 at the Occidental Chemical Plant, thereby not providing Mr. Ponds a reasonably safe workplace on August 23, 2015.").

[4] R. Doc. No. 21-3, at 12.

2

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Id.* "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).  Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant."  *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.  The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."  *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."  *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).  "There is no more certain test for determining when experts may be used than the

common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

## LEGAL CONCLUSIONS

Force Corporation first cites Judge Engelhardt's opinion in *Wyeth v. Rowan Companies, Inc.*, No. 07-2823, 2008 WL 3975625 (E.D. La. Aug. 26, 2008), for the rule that expert opinions regarding the legal duties owed by a defendant to a plaintiff and the scope of those duties are impermissible legal conclusions. Defendant then argues that "[i]n accordance with *Wyeth* and the Fifth Circuit case law cited therein, this Honorable Court should exclude all portions of Mr. Blackwell's report and any testimony regarding the existence and scope of duties owed by Force Corporation to plaintiff and the alleged breach of those duties."[5] In response, plaintiffs simply state that Blackwell's report does not contain any legal conclusions.

Experts may not offer legal opinions. *See Shawler v. Ergon Asphalt & Emulsions, Inc.*, No. 15-2599, 2016 WL 1019121, at *10 (E.D. La. Mar. 15, 2016) (Africk, J.) (quoting *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003)) ("Fifth Circuit case law is clear that Rule 704(a) 'does not allow a witness to give legal conclusions.'"). "An expert who usurps either the role of the judge by instructing the jury on the applicable law or the role of the jury by applying the law to the facts at

---

[5] R. Doc. No. 21-1, at 4.

issue 'by definition does not aid the jury in making a decision.'"  *Nagle*, 2016 WL
541436, at *5 (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).
Rather, such an expert "undertakes to tell the jury what result to reach and thus
attempts to substitute the expert's judgment for the jury's [judgment]."  *Id.* (internal
quotations omitted).  "Accordingly, although 'an expert may offer his opinion as to
facts that, if found, would support a conclusion that the legal standard at issue was
satisfied . . . he may not testify as to whether the legal standard has been satisfied.'"
*Id.* (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-
1213 (D.C. Cir. 1997)).

Blackwell's report opines that "Force Corporation failed to exercise reasonable
care in carrying out its duties to perform track maintenance and repairs of Track 18
at the Occidental Chemical Plant, thereby not providing Mr. Ponds a reasonably safe
workplace on August 23, 2015."[6]   As worded, that is an impermissible legal
conclusion.  *See, e.g.*, *Estate of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir.
1999) ("Accordingly, the district court did not abuse its discretion in excluding Dean
Galvin's testimony as an inadmissible legal opinion on the issue of 'reasonable
cause.'"); *In re Actos*, No. 12-CV-00064, 2014 WL 120973, at *13 (W.D. La. Jan. 10,
2014) ("For example, in a general negligence claim, a question which asks an expert
if 'the Defendant's conduct was negligent' would likely be objectionable as that is the
legal determination the jury is charged to make."); *Jacobs v. N. King Shipping Co.*,
No. 97-772, 1998 WL 28234, at *2 (E.D. La. Jan. 23, 1998) ("Captain Davenport offers

---

[6] *See* R. Doc. No. 21-3, at 12.

conclusions as to whether the crew of the vessel was negligent in its conduct toward Jacobs.  Courts have held that such blanket legal conclusions are an inappropriate subject for expert testimony.")

Based on his expertise, Blackwell will be permitted to offer his opinion that the conditions of Track 18 were unsafe.  However, Blackwell cannot take the additional step of instructing the jury that Force Corporation did not exercise reasonable care. Such an opinion goes a step too far and usurps the jury's role by simply telling the jury what result to reach.

Plaintiffs' counsel should proceed cautiously during his questioning of Blackwell at trial.  Admittedly, "[t]he task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).  Nevertheless, the questions must be worded so as not to invite objectionable testimony.

### GOVERNMENT REGULATIONS AND INDUSTRY STANDARDS

Force Corporation also seeks to exclude Blackwell's opinions that Force Corporation was not in compliance with certain industry standards and federal regulations at the time of the accident.  Force Corporation argues that those opinions should be excluded because "expert testimony is not required, or allowed, to support application of a regulation to a particular situation or to theorize whether the regulation has been violated by a defendant's actions."[7]

---

[7] R. Doc. No. 21-1, at 5.

Plaintiffs argue in response that the federal regulations and standards discussed by Blackwell do not have the force of law in this case and therefore Blackwell's opinions cannot be "legal conclusions."[8]  Plaintiffs acknowledge that the regulations do not apply because the track at issue is not part of the general railroad system and the track is therefore outside the jurisdiction of the Federal Railroad Administration ("FRA").  Notwithstanding, because Occidental Chemical allegedly agreed to adhere to FRA standards and directed Force Corporation to comply with those standards, plaintiffs argue that any violation of the standards and regulations is probative of negligence by Force Corporation.[9]  Because the regulations and standards at issue use terminology and discuss concepts that are outside the common experience of the typical juror, plaintiffs assert that expert testimony is permissible both to explain the standards and to opine why a violation of the standards occurred and how that alleged violation caused Ponds's injury.[10]

---

[8] R. Doc. No. 22, at 1.

[9] Plaintiffs recommend that the Court provide a limiting instruction to this effect.

[10] R. Doc. No. 22, at 4.  Although plaintiffs indicate that they intend to ask Blackwell whether Force Corporation's alleged failure to follow the industry standards and regulations caused Ponds's injury, such an opinion is not listed in Blackwell's report. *See* R. Doc. No. 21-3, at 12-13.  Moreover, the Court notes that there is a distinction between expert testimony that the alleged track conditions may have caused a certain result, and expert testimony that the track conditions did in fact cause such a result in this case.  The latter testimony may be inadmissible.

As Judge Morgan has observed, "distinguishing between admissible testimony regarding the inferences that can be drawn from facts of a certain case and an inadmissible ultimate legal conclusion on causation is often a fine line." *Cordes v. OSG ShipManagement, Ltd.*, No. 12-2214, 2013 WL 1992178, at *4 (E.D. La. May 10, 2013).  In light of that difficulty, the Court declines to decide the admissibility of any expert causation testimony without a specific line of questioning or testimony before it.  The Court instead cautions the parties that neither legal conclusions nor

The Fifth Circuit has explained that "[a] plaintiff may properly offer a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence per se." *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 n.22 (5th Cir. 1981). This Court has recognized that "[expert] testimony analyzing the conduct of the various parties with respect to various applicable rules and regulations may assist the trier of fact without crossing the line into impermissible legal conclusions." *Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, No. 13-6278, 2015 WL 5714622, at *6 (E.D. La. Sept. 28, 2015) (Africk, J.); *see also Mobil Expl. & Producing v. A-Z/Grant Int'l Co.*, No. 91-3124, 1996 WL 194931, at *3 (E.D. La. Apr. 22, 1996) (Fallon, J.) ("In the Court's opinion, Hill's proposed testimony regarding the existence and applicability of certain regulations—Coast Guard's regulations, CFRs—to the Rowan Paris and whether the alleged mislabeling was consistent or inconsistent with these regulations does not amount to a legal conclusion.").

The Court rejects Force Corporation's argument that experts can never testify about the applicability of industry standards and regulations to a particular situation. As for Force Corporation's argument that the particular regulations and standards at issue are simple enough that expert testimony would be unhelpful, the Court also disagrees. The propriety of expert opinion on the issue is demonstrated

---

unreliable testimony are permitted by an expert, and that questions regarding the subject of causation should be carefully phrased.

by—among other things—defendant's own expert's report, which devotes several pages to the subject of regulations.[11]

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

New Orleans, Louisiana, December 8, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[11] R. Doc. No. 22-2, at 4-9.