UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**REGINALD A. PONDS ET AL.**   **CIVIL ACTION**

**VERSUS**   **No. 16-1935**

**FORCE CORPORATION**   **SECTION I**

ORDER AND REASONS

Before the Court are two exhibit objections[1] filed by plaintiff Reginald Ponds and intervenor SGS Petroleum Service Corporation ("SGS").[2] The Court rules on the objections as set forth herein.

I.

The first exhibit objected to by plaintiff was an accident re-enactment video produced by plaintiff's employer, SGS. Plaintiff argued at the pretrial conference that the video constituted a subsequent remedial measure and that it was inadmissible under Rule 407 of the Federal Rules of Evidence. He now indicates that he withdraws that objection. Plaintiff instead acknowledges that the video is admissible provided a proper foundation is laid by the defendant, i.e., the re-enactment is "substantially similar" to the accident that occurred on August 23, 2015. *See* R. Doc. No. 43, at 1 (citing *Wallace v. Gen. Motors Corp.*, No. 94-2627, 1997 WL 269498, at *1 (E.D. La.

---

[1] R. Doc. No. 43.
[2] The Court allowed SGS to join plaintiff's objection to the "Root Cause Investigation Report," addressed in the second part of this opinion, during a January 6, 2017 telephone conference.

May 19, 1997) (Duval, J.) ("Video re-enactments must be substantially similar in order to be relevant.")).

In light of his changed position, plaintiff's Rule 407 objection to the video is dismissed as moot. If there is an objection at trial based on the failure to establish a foundation which would support the video's introduction, the Court will decide the admissibility of the video at that time.

## II.

Plaintiff and SGS also object to Force Corporation ("Force") introducing at trial a portion of the "Root Cause Investigation Report" that was created by SGS two days after the accident. The report contains a summary of the accident, describes what SGS believed to be the cause of the accident, and lists a number of "Corrective Action Items" which were to be implemented by SGS as a result of the accident. Each action item was given a due date for completion and was assigned an "actionee" tasked with implementing the action item. During a telephone conference with the Court on January 6, 2017, all parties agreed that the "Corrective Action Items" were actually implemented by SGS after the accident.

Plaintiff and SGS acknowledge that the report itself is not barred by Rule 407, *see* R. Doc. No. 43, at 2 (admitting that "post-accident investigations and tests do not fall within the exclusion of Rule 407"), and so they seek to exclude "only those sections of the report . . . that itemize the Corrective Actions taken by SGS Petroleum post-accident," *id.* at 2. Although plaintiff and SGS technically advance only an exhibit objection, it is reasonable to assume that they also object to the introduction of any

2

evidence that the remedial measures were actually implemented by SGS following the accident.

Rule 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. The Advisory Committee Notes explain that the primary justification for Rule 407 is the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407, Advisory Committee Note (1972); *see also Adams v. Chevron USA, Inc.*, 383 F. App'x 447, 452 (5th Cir. 2010). "The rule also seeks to ensure that negligence is properly determined according to what the defendant knew or should have known prior to the accident, not what the defendant knew as a result of the accident." *Adams*, 383 Fed. App'x. at 452 (internal quotation marks omitted).

Although on its face Rule 407 does not distinguish between parties and non-parties, federal courts are in agreement that Rule 407 is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit. *See Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 583 (5th Cir. 1985) ("Since these repairs were made by a non-defendant, Rule 407 does not bar the evidence."); *Thornton v. Diamond Offshore Drilling, Inc.*, No. 07-1839, 2008 WL

2315845, at *7 (E.D. La. May 19, 2008) (Vance, J.) ("Courts recognize that evidence of a subsequent remedial measure is admissible when the post-accident change is taken by a third party."). Because SGS recently filed a complaint of intervention and is now a party to this lawsuit, SGS has standing to object pursuant to Rule 407.

As an initial matter, plaintiff and SGS are correct that the majority of the "Root Cause Investigation Report" is not barred by Rule 407. The Fifth Circuit has held that "an investigation and report taken in response to an accident cannot be a measure that is excluded from evidence under the rule." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 430 (5th Cir. 2006). The reason is that, "by themselves, post-accident investigations would not make the event less likely to occur; only the actual implemented changes make it so." *Id.* (citation omitted).

But when—as is the situation here—a post-accident report contains a list of recommended remedial measures which are later actually implemented, the case law supports excluding not only the fact that the remedial measures were implemented, but also the list of recommended remedial measures suggested in the post-accident report. *See id.* at 431 (refusing to decide "whether reports of post-event investigations are always admissible if the actually-implemented remedial measures are redacted," but implying that such reports should never be admitted absent a redaction). As Judge Zainey wrote recently in *Walker v. Pioneer Prod. Servs., Inc.*, No. 15-0645, 2016 WL 3459881, at *1 (E.D. La. June 24, 2016), "investigative reports that recommend remedial measures, like the one in the instant case, implicate the policies of Rule 407 [and any] such evidence should be excluded." *But see Robinson v. Diamond Offshore*

4

*Mgmt. Co.*, No. 04-1899, 2006 WL 197010, at *3 (E.D. La. Jan. 26, 2006) (Barbier, J.) (holding that "investigative reports that recommend measures are not themselves remedial measures and are not excluded by Fed. R. Evid. 407").

"In considering whether the [post-accident reports] are inadmissible under Rule 407," Judge Vance has explained that "the Court must evaluate the extent to which these documents contain evidence of actual remedial measures that [were taken] in response to the accident." *See Thornton*, 2008 WL 2315845, at *4. While courts generally recognize that "test results" and "investigative findings" are beyond the exclusionary reach of Rule 407, *id.*, "[c]ourts that have admitted internal investigative reports and tests have emphasized that such reports did not include evidence of recommendations or whether the party had acted on such recommendations," *id.* at *5. Excluding the sections of post-accident reports that recommend remedial measures—irrespective of whether those remedial measures are actually implemented—is consistent with the policy goals of Rule 407. As Judge Vance explained in *Thornton*:

> Although recommendations are not remedial measures that have been implemented, they are of the same character in that they reflect a party's post-accident considerations and thinking about policy changes and safety improvements. Such recommendations go beyond the initial steps toward ascertaining whether any remedial measures are called for, as they relate to a course of future conduct. They do not speak directly to the cause of an accident, which is the recognized basis for admitting investigative findings and test results.

*Id.* (internal quotation and citation omitted). Where the remedial measures recommended in a post-accident report are actually implemented, the case is that much stronger for excluding the recommendations.

The Court finds that all of the "Corrective Action Items" listed in the post-accident report fall within the exclusionary scope of Rule 407. The seven corrective action items listed in the report are:

1. Immediately restrict riding a railcar on the rack side of the train while spotting the caustic rack.
2. Perform hazard assessment on all other racks inside the Oxy facility to determine if we should ride rail cars while entering to determine best practices.
3. Retrain employees to always face the direction of travel while train is in motion.
4. Paint white lines on tracks 18 & 19 to help switch crew spot correctly from opposite side of the rack.
5. Update procedures & train switch crews regarding procedure changes discussed.
6. Share lessons learned with our Oxy switch crew as well as our company wide.
7. Research restricted ride zone signage to place at specified racks.

R. Doc. No. 43-1, at 2.

Force acknowledges that five of the items on the list are inadmissible subsequent remedial measures, but argues that item numbers 1 and 3 should be admitted to prove the culpability of SGS. *See* R. Doc. No. 52, at 1 ("Plaintiff contends that these items fall within the category of inadmissible subsequent remedial measures under Rule 407; however, Force should be able to reference items numbers 1 and 3 of the list . . . ."). Force asserts that item numbers 1 and 3 are not "subsequent remedial measures" because both of those items were listed in Occidental Chemical Corporation's ("Oxy") safety procedures *prior* to the accident. Although SGS was

6

allegedly obligated to comply not only with its own safety procedures but also with Oxy's safety procedures as part of its contract with OXY, Force argues that SGS did not incorporate item numbers 1 and 3 into the SGS safety procedures until after plaintiff's accident. On that basis, Force seeks to carve out the items from Rule 407's reach.

Rule 407 is clear that when measures are implemented after an accident that are intended to make an earlier injury or harm less likely to occur in the future, those measures are inadmissible to prove fault. Whether SGS knew of or should have already incorporated item numbers 1 and 3 into SGS's safety procedures is not relevant to the analysis. Regardless of the reason, SGS had not implemented the procedures before the accident; it did implement them after the accident. If SGS's adoption of item numbers 1 and 3 into their safety procedures were to be admitted against SGS at trial, SGS would be less likely to adopt such post-accident measures in the future. That is precisely the result that Rule 407 seeks to avoid.

Accordingly, Force may not introduce either the fact of the remedial measures or the report's recommendation that remedial measures be taken in an attempt to prove SGS's culpability at trial.[3] The "Corrective Action Items" list must be redacted from the "Root Cause Investigation Report."

---

[3]Nothing in this order precludes defendant from arguing that certain safety measures were included in the Oxy safety procedures prior to the accident, but were not included in the SGS safety procedures prior to the accident. Defendant can also argue that SGS was at all times obligated to comply with Oxy's safety procedures. What defendant cannot do is introduce evidence that SGS changed its safety procedures subsequent to the accident in order to prove that SGS was responsible for the accident. In order to ensure that this line is not crossed at trial, counsel should

7

### III.

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's objection regarding the accident re-enactment video is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's objection regarding the "Root Cause Investigation Report" is **GRANTED** as set forth herein.

New Orleans, Louisiana, January 6, 2017.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

approach the bench and obtain Court permission before mentioning the two safety measures that were omitted from the SGS safety procedures.